IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

INYANG A. INYANG,            Case No. 1:13 CV 2752

          Petitioner,          <u>MEMORANDUM OPINION</u>

     -vs-

ERICH. HOLDER, *et al.,*

          Respondents.

KATZ, J.

*Pro se* Petitioner Inyang A. Inyang filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner is currently incarcerated in the Bedford Heights City Jail awaiting deportation. In the Petition (Doc. 1), he challenges his continued incarceration and asserts he has been held for an unreasonable length of time. He seeks immediate release from custody, and an award of monetary damages.

Petitioner filed an Application to Proceed *In Forma Pauperis* (Doc. 2). That Application is granted.

**I. Background**

Petitioner is a native and a citizen of Nigeria. He entered the United States in May 1987 on a visitor's visa that expired in October 1987. *See Inyang v. Holder*, No. 13-3705 (6th Cir. Mar. 12, 2014). He was granted a change in status to a non-immigrant student, but failed to fulfill the conditions of his student visa by attending school. *Id.* In 1992, he was convicted by a Minnesota jury on forgery charges and was sentenced to one year and one day in prison. *Id.* Based on this conviction, the Immigration and Naturalization Service ("INS" nka the Immigration and Custom

Enforcement Agency ("ICE")), issued an order to show cause, charging Petitioner with deportability under former Section 241(a)(2)(A)(I) of the Act, 8 U.S.C. § 1251 (a)(4) (1988). A hearing was held before an immigration judge and in April 1994, the judge issued a decision ordering Petitioner to be deported based on the charge, which the judge found to be a crime of moral turpitude.

Petitioner married a United States citizen in 1996. In August 2002, an Immigration judge granted Petitioner's request to adjust his status to that of lawful permanent resident based on his wife's approved immediate relative petition, notwithstanding Petitioner's prior conviction.

Petitioner was charged in 2009 with participating in a scheme from 2003 through 2006 to knowingly and intentionally defraud mortgage lenders using the identification and social security numbers of other individuals to obtain the mortgages. Petitioner pled guilty to one count of aggravated identity theft in violation of 18 U.S.C. 1028A(a)(1). A federal district court accepted his plea in 2010 and he was sentenced to twenty-four months in prison and ordered to pay restitution in the amount of $ 422,445.00.

The Department of Homeland Security ("DHS") commenced removal proceedings against Petitioner charging him with removability based on his identity theft conviction. The DHS considered this offense to be an aggravated felony involving fraud or deceit pursuant to Sections 101(a)(43)(M) and 237 (a)(2)(A)(iii) of the Act, 8 U.S.C. §§ 1101(a)(43)(M) and 1227 (a)(2)(A)(iii). The DHS later added Petitioner's prior crime involving moral turpitude, and added that the identity theft was a theft offense as defined under § 101(a)(43)(G). The immigration judge determined Petitioner's identity theft conviction qualified as an aggravated felony under the Act as defined under § 1101(a)(43)(M), and reserved for a later decision the questions of whether his

past conviction was one of moral turpitude and whether he could be charged with violating a theft offense under 8 U.S.C. § 1101(a)(43)(G). On September 18, 2012 the immigration judge ordered Petitioner removed from the United States.

Petitioner then filed an application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). At a hearing on his application, Petitioner testified that he was arrested and mistreated in Nigeria because he was involved with Evangelical Christian Groups in a largely Muslim country. These incidents took place in the middle 1980's. He testified that he believed he would be handed over to Islamic fundamentalists if he were returned to Nigeria. The immigration judge concluded that Petitioner's 2009 conviction fell within the definition of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M), and that his prior conviction was for a crime of moral turpitude, thereby rendering him ineligible for asylum. The immigration judge found his testimony for withholding of removal to be not credible and denied his request.

Petitioner appealed that decision to the Board of Immigration Appeals. The Board concurred that Petitioner was ineligible for discretionary waiver of admissibility under 8 U.S.C. §§1182(h) and 1229b(a)(3), and was further ineligible for asylum. The Board dismissed his appeal finding him removable and denying his applications for withholding of removal, and denial of relief under the CAT on May 22, 2013.

Petitioner appealed the decision of the Board of Immigration Appeals to the United States Sixth Circuit Court of Appeals on June 7, 2013. At the same time, he filed a Motion for Stay of Removal. The Court of Appeals denied the Motion on August 15, 2013.

On July 7, 2013, Petitioner was called out of the population of the Geauga County Jail, where he was then being detained, to speak with Nigeria Consulate Officer, Mr. Henry, and

-3-

Deportation Officer, Aaron Roby. During the conversation, Officer Roby disclosed to the Consulate Officer Mr. Henry that Petitioner had filed for asylum and withholding, and his appeal of the denial of that decision was pending with the Board of Immigration Appeals. Mr. Henry requested that Petitioner send a copy of his brief to the Consulate Office in New York. On July 30, 2013, Petitioner received a Decision to Continue Detention from ICE. In that Decision letter, he was told the Nigerian Consulate would not issue travel documents to Petitioner to facilitate his removal from the United States while his appeal was pending before the Sixth Circuit.

The Sixth Circuit issued its information copy of their decision denying Petitioner's appeal on March 12, 2014. The Court issued its mandate on May 6, 2014. On the same day the information copy was issued by the Sixth Circuit, Petitioner received a second Decision to Continue Detention by the Headquarters Post Order Review Unit ("HQ POCRU") of ICE. Petitioner indicates the same reason for his continued detention was given. Petitioner does not provide a copy of that Decision and it is therefore unclear whether the HQ POCRU was aware of the Sixth Circuit's decision issued that same day.

Petitioner filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on December 17, 2013, while his appeal to the Sixth Circuit was still pending. He asserts two claims for relief. First, he argues he has been detained in custody without bond for an unreasonable length of time with no foreseeable date of deportation. Second, he challenges his conditions of confinement in the jail, including the diet is fed, the medical care he receives, and the elevated prices for stamps and telephone usage.

**II. Standard of Review**

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the

district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517-18 (2003). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

### III. Discussion

Under 8 U.S.C. § 1226, the Attorney General may arrest and detain an alien pending a decision on whether the alien is to be removed from the United States ("the pre-removal period"). During the pre-removal period, detention without release on bond is mandatory for certain classes of criminal noncitizens. *See* 8 U.S.C. § 1226(c)(1) and (2). The pre-removal period begins when the petitioner is taken into ICE custody and continues until he receives an administratively final order of removal. An order of removal becomes administratively final upon "a determination by the Board of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B).

After the order of removal becomes administratively final, the Attorney General "shall

detain the alien" during the 90-day removal period[1] under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001); *see also Morales–Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir.2005). The Government generally is required to remove an alien in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).

The Government may, however, detain an inadmissible or criminal alien beyond the statutory removal period. *See* 8 U.S.C. § 1231(a)(6). The Government's ability to detain an alien under this provision is not unlimited. *Zadvydas*, 533 U.S. at 699. To avoid a "serious constitutional threat," the Supreme Court interpreted the post-removal-period detention statute to prohibit continued detention "once removal is no longer reasonably foreseeable...." *Id.* Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Detention beyond six months, however, does not, by itself, mean that the alien must be released. *Id.*

In *Zadvydas*, the Petitioner had been ordered removed and was being detained beyond the 90-day removal period pursuant to the Attorney General's authority under § 1231(a)(6). *Zadvydas*, 533 U.S. at 684–86. The government, however, could not secure his removal because the designated country of which he was a citizen either refused to accept him or did not maintain a repatriation agreement with the United States. *Id.* Under the circumstances, there was no

---

[1] *See* 8 U.S.C. § 1231(a)(1) (stating that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

likelihood that Zadvydas would be deported within the foreseeable future. Recognizing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Id*. at 690, the Court ruled that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized," *Id*. at 699.

Since *Zadvydas* came down, the Supreme Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future. In *Demore v. Kim*, 538 U.S. 510, 531 (2003), the Court approved the mandatory detention of a criminal alien during removal proceedings under 8 U.S.C. § 1226(c) even in the absence of an individualized finding that the alien was unlikely to appear for his removal hearing if released on bond. The Court distinguished *Zadvydas* on two independent grounds. First, in *Zadvydas*, "removal was 'no longer practically attainable,'" whereas it was attainable in Kim's case. *Id*. at 527-28 (quoting *Zadvydas*, 533 U.S. at 690). Second, in *Zadvydas*, the period of detention at issue was "'indefinite' and 'potentially permanent.'" *Kim*, 538 U.S. at 528 ( quoting *Zadvydas*, 533 U.S. at 690-91). By contrast, Kim had not demonstrated that there was a real danger of indefinite or permanent detention, and it was therefore premature to apply the due process analysis. *Id*. at 529.

The *Zadvydas* holding prompted the DHS to issue regulations addressing the criteria established by the Court. See 8 C.F.R. § 241.4. Thus, before the 90 day removal period expires, the District Director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). If the alien's release is denied pending removal, the District Director may retain responsibility for custody determinations for up to three months, or refer the alien to the HQ POCRU for further custody review. 8 C.F.R.

§ 241.4(k)(1)(ii).

Petitioner asserts he has been detained since his release from prison on April 20, 2012 and has not yet been deported, thereby entitling him to release. His detention during his pre-removal period, which extended from the date he was released from prison on April 20, 2012 to the date his order of removal became administratively final on May 22, 2013, was mandatory under 8 U.S.C. § 1226(c)(1) and (2). When his order of removal became administratively final on May 22, 2013, the 90-day removal period began. Detention during the removal period was required under 8 U.S.C. § 1231(a)(2). The removal period expired on December 23, 2013.

Petitioner's detention in the post-removal-period from December 23, 2013 until the present date is governed by 8 U.S.C. § 1231(a)(6), which authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period but only for a period reasonably necessary to secure the alien's removal. The Court must now determine whether, like Zadvydas, removal for Petitioner is "no longer practically attainable" resulting in a period of detention that is "indefinite" and "potentially permanent." *Zadvydas*, 533 U.S. at 690-91. Based on the allegations in the Petition (Doc. 1) and the Supplemental Brief (Doc. 3), Petitioner failed to demonstrate that this is the case.

Immediately after he received his final administrative order of removal, Petitioner appealed that decision to the United States Sixth Circuit Court of Appeals on June 7, 2013. One month later, on July 7, 2013, he was interviewed by the Nigerian Consulate in New York. The Consulate Officer asked Petitioner to submit a copy of his brief to the Sixth Circuit. Thereafter, on July 30, 2013, Petitioner received his first custody review. He was told Nigeria had confirmed that he is both a citizen and a national of that country; however, it would not issue travel documents while

his appeal to the Sixth Circuit was pending. The Sixth Circuit recently issued the information copy of its decision on March 12, 2014, and its mandate on May 6, 2014. Now that the Sixth Circuit has decided the appeal and issued a final appealable order, the contingency upon which Nigeria was waiting to issue travel documents has been removed. Petitioner has given no indication that Nigeria will continue to refuse to issue travel documents and that his removal is no longer attainable. Petitioner may be detained for a period reasonably necessary to secure his removal now that his appeal has been decided. His due process claims are therefore premature.

Finally, the Court may not entertain Petitioner's challenges to the conditions of his confinement while in ICE custody in the context of a petition for a writ of habeas corpus. Where a pleading states claims challenging only the conditions of confinement, it does not state a claim for relief cognizable under 28 U.S.C. § 2241. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Moreover, the Court should not attempt to construe the petition as a complaint for relief under 42 U.S.C. § 1983, but rather should dismiss the claims without prejudice in order to allow the petitioner to file a proper § 1983 action. *Id*.

**IV. Conclusion**

Accordingly, Petitioner's application to Proceed *In Forma Pauperis* (Doc. 2) is granted, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is denied and this action is dismissed without prejudice pursuant to 28 U.S.C. § 2243. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE